# 13-1289-bk(L)

## 13-1392-cv(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION
OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

*Plaintiff-Appellant,*

—against—

SECURITIES & INVESTMENT COMPANY BAHRAIN, HAREL INSURANCE
COMPANY, LTD., AXA PRIVATE MANAGEMENT, ST. STEPHEN'S SCHOOL, PACIFIC
WEST HEALTH MEDICAL CENTER, INC. EMPLOYEE'S RETIREMENT TRUST,

*Lead Plaintiffs-Appellees,*

(*caption continued on inside cover*)

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

MARK G. CUNHA, ESQ.
PETER E. KAZANOFF, ESQ.
JEFFREY L. ROETHER, ESQ.
JEFFREY E. BALDWIN, ESQ.
NICHOLAS S. DAVIS, ESQ.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

*Attorneys for Defendants-Appellees Fairfield Greenwich Limited, Fairfield
Greenwich (Bermuda) Limited, Fairfield Heathcliff Capital LLC, Fairfield
Greenwich Advisors, LLC, Fairfield Risk Services Limited, Lourdes Barreneche,
Vianney d'Hendecourt, Yanko Della Schiava, Corina Noel Piedrahita, Harold
Greisman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Julia
Luongo, Mark McKeefry, Maria Teresa Pulido Mendoza, Charles Murphy,
Santiago Reyes, Andrew Smith, Philip Toub, and Amit Vijayvergiya*

(*Counsel continued inside*)

Pasha S. Anwar, on behalf of themselves and all others similarly situated investors in the Greenwich Sentry, L.P. private investment limited partnership, Julia Anwar, on behalf of themselves and all others similarly situated investors in the Greenwich Sentry, L.P. private investment limited partnership, Inter-American Trust, Elvira 1950 Trust, Bonaire Limited, Carlos Gauch, Loana Ltd., Wall Street Securities, S.A., Banco General, S.A., Harvest Dawn International Inc., El Prado Trading, Omawa Investment Corporation, Carmel Ventures Ltd., Traconcorp, Blythel Associated Corp., Marrekesh Resources, Centro Inspection Agency, Kalandar International, Landville Capital Management S.A., 20/20 Investments, AXA Private Management, Diversified Investments Associates Class A Units, ABR Capital Fixed Option/Income Strategic Fund LP, Harel Investment and Financial Services Ltd., Miguel Lomeli, Morning Mist Holdings Limited, Jitendra Bhatia, Gopal Bhatia, Kishanchand Bhatia, Jayshree Bhatia, Mandakini Gajaria, ABN AMRO Life S.A., Bahia del Rio S.A., Bevington Management, Ltd., Calwell Investment S.A., Diamond Hills Inc., Hedge Strategy Fund LLC, Kivory Corporation, North Club, Inc., PFA Pension A/S, Taurus the Fourth Ltd., Zenn Assets Holding, Ltd., Carlos Mattos, Chandrashekar Gupta, Deepa Gupta, Ulrich Blass, Roberto Cioci, Sandra Marchi Cioci, John Paul Dougherty, E. Thomas Dougherty Novella, Muniandy Nalaiah, Lila Neemberry, Peter A. & Rita M. Carfagna Irrevocable Charitable Remainder UniTrust, Moshe Podhorzer, R. Wickneswari V. Ratnam, Enrique Santos, Enrique Santos Calderon, Jacqueline Urzola, Josefina Santos Urzola, Felipe J. Benavides, Fundacion Virgilio Barco, David Hopkins, Catalina Mejia, Cesar Mejia, R.M. Rademaker, The Alpha and Omega Partnership, LP, Richmon Company Ltd., Positano Investment Ltd.,

*Plaintiffs-Appellees,*

Pacific West Health Medical Center Inc. Employees Retirement Trust, On behalf of Itself, Pacific West Health Medical Center Inc. Employees Retirement Trust, on Behalf of All Others Similarly Situated, Shimon Laor, David I. Ferber, The Knight Services Holdings Limited, on behalf of itself and all others similarly situated, Frank E. Pierce, Frank E. Pierce Ira, Nadav Zohar, on behalf of themselves and all others similarly situated, Ronit Zohar, Fairfield Sentry Ltd., Headway Investment Corp., BPV Finance (International) Ltd., Jose Antonio Pujals, individually and in their representative capacities for all those similarly situated, Rosa Julieta A De Pujals, individually and in their representative capacities for all those similarly situated, Maridom Limited, a Foreign Corporation, Ricardo Lopez, Standard Chartered Bank International (Americas) Limited, Stanchart Securities International, Inc., Maria Akriby Valladolid, Ricardo Rodriguez Caso, Wong Yuk Hing De Lou, Moises Lou Martinez, Joaquina Teresa Barbacha Herrero, Sand Overseas

LIMITED, SAND OVERSEAS LIMITED, BLOCKBEND LTD, BAYMALL INVESTMENTS LTD, EASTFORK ASSETS LTD, GERICO INVESTMENTS, INC., ALICIA GAVIRIA RIVERA, EDUARDO CHILD ESCOBAR, MAILAND INVESTMENT INC.,

*Consolidated Plaintiffs-Appellees,*

ARJAN MOHANDAS BHATIA, TRADWAVES, LTD., PARASRAM DARYANI, NEELAM P. DARYANI, VIKAS P. DARYANI, NIKESH P. DARYANI, ASHOKKUMAR DAMODARDAS RAIPANCHOLIA, PRERNA VINOD UTTAMCHANDANI, KISHIN MOHANDAS BHATIA, SURESH M. BHATIA, BHARAT MOHANDAS, AARVEE LTD., DILIP DAMODARDAS RAIPANCHOLIA, RAJESHKUMAR DAMODARDAS RAIPANCHOLIA, KISHU NATHURMAL UTTAMCHANDANI, RAJENDRAKUMAR PATEL, VANDNA PATEL,

*All Plaintiffs-Appellees.*

—against—

FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LIMITED, PACIFIC WEST MEDICAL CENTER EMPLOYEES RETIREMENT TRUST, HAREL INSURANCE COMPANY LTD., MARTIN AND SHIRLEY BACH FAMILY TRUST, NATALIA HATGIS, SECURITIES AND INVESTMENT COMPANY BAHRAIN, DAWSON BYPASS TRUST, ST. STEPHEN'S SCHOOL, WALTER M. NOEL, JR., JEFFREY H. TUCKER, ANDRES PIEDRAHITA, LOURDES BARRENECHE, ROBERT BLUM, CORNELIS BOELE, GREGORY BOWES, VIANNEY D'HENDECOURT, YANKO DELLA SCHIAVA, HAROLD GREISMAN, JACQUELINE HARARY, DAVID HORN, RICHARD LANDSBERGER, DANIEL E. LIPTON, JULIA LUONGO, MARK MCKEEFRY, CHARLES MURPHY, CORINA NOEL PIEDRAHITA, MARIA THERESA PULIDO MENDOZA, SANTIAGO REYES, ANDREW SMITH, PHILIP TOUB, AMIT VIJAYVERGIYA,

*Defendants-Appellees,*

YANKO DELLA SCHIAVA, PHILIP TOUB, LOURDES BARRENECHE, CORNELIS BOELE, VIANNEY D'HENDECOURT, HAROLD GREISMAN, JACQUELINE HARARY, DAVID HORN, RICHARD LANDSBERGER, DANIEL LIPTON, JULIA LUONGO, MARK MCKEEFRY, MARIA TERESA PULIDO MENDOZA, CHARLES MURPHY, SANTIAGO REYES, ANDREW SMITH, CITCO BANK NEDERLAND N.V. DUBLIN BRANCH, GLOBEOP FINANCIAL SERVICES LLC., CITCO CANADA INC., PRICEWATERHOUSE COOPERS ACCOUNTANTS N.V., GREENWICH SENTRY, L.P., FAIRFIELD SENTRY LIMITED, CITGO GLOBAL CUSTODY N.V., PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED, PRICEWATERHOUSECOOPERS LLP (US), PRICEWATERHOUSECOOPERS LLP CHARTERED ACCOUNTANTS, FAIRFIELD GREENWICH (BERMUDA) LIMITED, FAIRFIELD GREENWICH ADVISORS, LLC, FAIRFIELD INTERNATIONAL MANAGERS, INC., ROBERT BLUM, STANDARD CHARTERED INTERNATIONAL (USA) LTD., STANDARD CHARTERED PLC, AMERICAN EXPRESS BANK LTD., STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED, a Foreign entity, STANDARD CHARTERED PRIVATE BANK, Foreign entity, and a private banking division of Standard Chartered Bank, STANDARD

CHARTERED BANK, GREGORY BOWES, STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED,

*Consolidated Defendants-Appellees,*

FAIRFIELD GREENWICH CORP.,

*Consolidated Counter Defendant-Appellee,*

1-20 JOHN DOES,

*Defendants,*

SECURITIES INVESTOR PROTECTION CORPORATION,

*Intervenor.*

———————————————

MARC E. KASOWITZ, ESQ.
DANIEL J. FETTERMAN, ESQ.
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Defendant-Appellee*
*Jeffrey H. Tucker, Esq.*

ANDREW J. LEVANDER, ESQ.
NEIL A. STEINER, ESQ.
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3683

*Attorneys for Defendant-Appellee*
*Andres Piedrahita*

EDWARD M. SPIRO, ESQ.
MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendants-Appellees*
*Robert Blum and David Horn*

BRUCE ALLEN BAIRD, ESQ.
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 662-5122

*Attorneys for Defendant-Appellee*
*Gregory Bowes*

GLENN M. KURTZ, ESQ.
ANDREW HAMMOND, ESQ.
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Defendant-Appellee*
*Walter M. Noel*

SEAN F. O'SHEA, ESQ.
O'SHEA PARTNERS LLP
521 Fifth Avenue, 25th Floor
New York, New York 10175
(212) 682-4426

*Attorneys for Defendant-Appellee*
*Cornelis Boele*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, undersigned counsel for Defendants-Appellees Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited and Fairfield Heathcliff Capital LLC certifies as follows:

1.     Fairfield Greenwich Limited has no parent corporation.  No publicly held corporation owns 10 percent or more of Fairfield Greenwich Limited's stock.

2.     Fairfield Greenwich (Bermuda) Limited has no parent corporation. No publicly held corporation owns 10 percent or more of Fairfield Greenwich (Bermuda) Limited's stock.

3.     Fairfield Greenwich Advisors, LLC is a wholly-owned subsidiary of Fairfield Greenwich Limited.  No publicly held corporation owns 10 percent or more of Fairfield Greenwich Advisors, LLC's stock.

4.     Fairfield Risk Services Limited is a wholly-owned subsidiary of Fairfield Greenwich Limited.  No publicly held corporation owns 10 percent or more of Fairfield Risk Services Limited's stock.

5.     Fairfield Heathcliff Capital LLC is a wholly-owned subsidiary of Fairfield Greenwich Limited.  No publicly held corporation owns 10 percent or more of Fairfield Heathcliff Capital LLC's stock.

/s/     Mark G. Cunha
MARK G. CUNHA

# **TABLE OF CONTENTS**

GLOSSARY ............................................................................................. x

INTRODUCTION ................................................................................... 1

COUNTERSTATEMENT OF THE ISSUES PRESENTED ................... 5

COUNTERSTATEMENT OF THE CASE ............................................. 6

    A.    Background ............................................................... 6

    B.    The Anwar Action ................................................... 9

    C.    The Trustee's Avoidance Action ........................... 11

    D.    The Trustee's Signals that He Would Not Seek to Enjoin an Anwar Settlement ............................... 12

    E.    The Anwar Settlement ........................................... 14

    F.    The Trustee's Belated Effort to Interfere with Anwar ........................ 15

        1.    The Trustee Files the Injunction Action ................... 15

        2.    The Trustee Seeks to Intervene in Anwar ............... 16

        3.    The District Court Dismisses the Injunction Action and Approves the Settlement ........................... 18

SUMMARY OF THE ARGUMENT ................................................... 19

COUNTERSTATEMENT OF THE STANDARD OF REVIEW ......... 22

ARGUMENT ....................................................................................... 23

I.    Anwar Does Not Implicate the Automatic Stay ................... 23

    A.    Section 362(a)(1) Does Not Apply ....................... 24

    B.    Section 362(a)(3) Does Not Apply ....................... 26

II.   The District Court Did Not Abuse its Discretion in Declining to Grant
      a Preliminary Injunction Under Section 105(a) of the Bankruptcy Code.....29

      A.   The Trustee Has Not Attempted to Satisfy the Standards for
           a Preliminary Injunction................................................................29

      B.   The Trustee Failed to Meet Any Specialized Requirement
           for a Section 105(a) Injunction .........................................................31

      C.   The Cases Cited By the Trustee Do Not Warrant Reversal................34

      D.   The Court Did Not Commit an Error of Law .....................................36

III.  SIPA Does Not Preempt Independent Federal and State Law Claims .........37

      A.   SIPA Does Not Preempt State Law ....................................................38

      B.   SIPA Did Not Repeal Exchange Act Claims .....................................39

IV.   The District Court Did Not Abuse its Discretion in Dismissing the
      Injunction Action Under the Doctrine of Laches ..........................................42

      A.   The District Court's Findings of Fact Were Not Erroneous...............43

      B.   The District Court Did Not Commit an Error of Law ........................47

V.    The District Court's Orders Regarding Intervention in Anwar Were
      Not Abuses of Discretion ..............................................................................49

      A.   The Trustee Properly Applied the Requirements of Rule 24..............49

      B.   Denying a Pointless Request to Supplement the Record
           Was Not an Abuse of Discretion........................................................51

      C.   The District Court's Approval of the Settlement Was Proper ...........52

      CONCLUSION..................................................................................................53

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Bus. Solutions, Inc. v. Abnos*,
482 F.3d 602 (2d Cir. 2007) ...................................................................31

*Anwar v. Fairfield Greenwich Ltd. (Anwar I)*,
728 F. Supp. 2d 354 (S.D.N.Y. 2010) ....................................................10

*Anwar v. Fairfield Greenwich Ltd. (Anwar II)*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ....................................................10

*Baguer v. Spanish Broad. Sys., Inc.*,
423 F. App'x 102 (2d Cir. 2011) .............................................................23

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
754 F.2d 57 (2d Cir. 1985) .....................................................................28

*Branch v. Smith*,
538 U.S. 254 (2003) .................................................................................40

*Bray v. City of New York*,
346 F. Supp. 2d 480 (S.D.N.Y. 2004) ....................................................43

*Brown v. Quiniou*,
467 F. App'x 13 (2d Cir. 2012) ..............................................23, 46, 49

*Burnett v. N.Y. Cent. R.R.*,
380 U.S. 424 (1965) .................................................................................23

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989) ...................................................................................38

*Cleveland Newspaper Guild v. Plain Dealer Publ'g Co.*,
839 F.2d 1147 (6th Cir. 1988) ................................................................49

*Collins v. S. New England Tel. Co.*,
617 F. Supp. 2d 67 (D. Conn. 2009) .......................................................38

*Columbia Pictures Indus., Inc. v. Am. Broad. Cos.*,
501 F.2d 894 (2d Cir. 1974) ...................................................................36

*Conopco, Inc. v. Campbell Soup Co.*,
95 F.3d 187 (2d Cir. 1996) .................................................42

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .................................................23

*Danning v. Bozek (In re Bullion Reserve of N. Am.)*,
836 F.2d 1214 (9th Cir. 1988) .............................................36

*Dictograph Prods. Co. v. Sonotone Corp.*,
231 F.2d 867 (2d Cir. 1956) .................................................52

*eBay, Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)..........................................................31

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*,
847 F.2d 1038 (2d Cir. 1988) .............................................53

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
980 F.2d 125 (2d Cir. 1992) ........................................passim

*Fisher v. Apostolou*,
155 F.3d 876 (7th Cir. 1998) .........................................35, 36

*Fox v. Picard (In re Madoff)*,
429 B.R. 423 (Bankr. S.D.N.Y. 2010)..................................14

*Fox v. Picard (In re Madoff)*,
848 F. Supp. 2d 469 (S.D.N.Y. 2012) ..................................44

*General Motors Acceptance Corp. v. United States*,
286 U.S. 49 (1932)..........................................................40

*Heintz v. Jenkins*,
514 U.S. 291 (1995)..........................................................40

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) .................................................28

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999)..........................................................40

*In re Best Payphones, Inc.*,
450 F. App'x 8 (2d Cir. 2011) ................................................. 51

*In re CHS Elecs., Inc.*,
261 B.R. 538 (Bankr. S.D. Fla. 2001) ...................................... 33

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000) .................................................... 50

*In re J.P. Jeanneret Assocs., Inc.*,
769 F. Supp. 2d 340 (S.D.N.Y. 2011) ..................................... 30

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
917 F.2d 75 (2d Cir. 1990) ..................................................... 30

*Koolik v. Markowitz*,
40 F.3d 567 (2d Cir. 1994) ..................................................... 24

*Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013) ................................................ 2, 36

*Marino v. Ortiz*,
484 U.S. 301 (1988) ............................................................... 52

*MasterCard Int'l Inc. v. VISA Int'l Serv. Ass'n*,
471 F.3d 377 (2d Cir. 2006) ............................................. 23, 50

*Matthews v. Rosene*,
739 F.2d 249 (7th Cir. 1984) ................................................. 43

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ............................................................... 34

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ............................................................... 38

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003) ................................................... 42

*Moore v. Consol. Edison Co. of N.Y., Inc.*,
409 F.3d 506 (2d Cir. 2005) ................................................... 34

*Morrison v. Nat'l Australia Bank Ltd.*,
130 S. Ct. 2869 (2010)......................................................................30

*Morton v. Mancari*,
417 U.S. 535 (1974).........................................................................40

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*
*(In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86 (2d Cir. 2003).............32

*New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*,
873 F.2d 576 (2d Cir. 1989) ...........................................................43

*PenneCom B.V. v. Merill Lynch & Co.*,
372 F.3d 488 (2d Cir. 2004) ...........................................................48

*Perez v. Danbury Hosp.*,
347 F.3d 419 (2d Cir. 2003) ......................................................23, 42

*Picard v. Fairfield Greenwich Ltd.*,
490 B.R. 59 (S.D.N.Y. 2013)...............................................................1

*Picard v. HSBC Bank PLC*,
454 B.R. 25 (S.D.N.Y. 2011)......................................................28, 30

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011).........................................................30

*Picard v. Lautenberg (In re Bernard L. Madoff Inv. Sec., LLC)*,
No. 11-5421, 2013 WL 616269 (2d Cir. Feb. 20, 2013).........................34

*Picard v. Maxam Absolute Return Fund, L.P.*
*(In re Bernard L. Madoff Inv. Sec. LLC)*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011)............................................14, 44

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010)...............................................33

*Picard v. Schneiderman*,
 No. 12 MC 115, --- B.R. ---, 2013 WL 1562352 (S.D.N.Y. Apr. 15, 2013)............1

*Picard v. Stahl (In re Bernard L. Madoff Inv. Sec. LLC)*,
443 B.R. 295 (Bankr. S.D.N.Y. 2011).................................14, 33, 35, 37

*Pope v. County of Albany*,
687 F.3d 565 (2d Cir. 2012) ....................................................22

*Queenie, Ltd. v. Nygard Int'l*,
 321 F.3d 282 (2d Cir. 2003) ..................................................31

*Randolph v. IMBS, Inc.*,
368 F.3d 726 (7th Cir. 2004) ....................................39, 40, 41

*Rosewood Apartments Corp. v. Perpignano*,
200 F. Supp. 2d 269 (S.D.N.Y. 2002) ...................................30

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ...............................................29, 31

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No 12 Misc. 115, 2012 U.S. Dist. LEXIS 78804 (S.D.N.Y. May 15, 2012) ..........32

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Securities LLC
(In re Madoff)*, No. 12 MC 0115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...30

*Serdarevic v. Advanced Med. Optics, Inc.*,
532 F.3d 1352 (Fed. Cir. 2008) ............................................48

*Solow v. Kalikow (In re Kalikow)*,
602 F.3d 82 (2d Cir. 2010) ...............................................31, 33

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
803 F.2d 61 (2d Cir. 1986) ....................................................24

*Thorton v. First State Bank of Joplin*,
4 F.3d 650 (8th Cir. 1993) ....................................................43

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*,
17 F.3d 38 (2d Cir. 1994) .....................................................23

*Tufariello v. Long Island R. R.*,
458 F.3d 80 (2d Cir. 2006) ...................................................39

*United States Shipping Bd. Emergency Fleet Corp. v. Rosenberg Bros. & Co.*,
276 U.S. 202 (1928) ...........................................................40

*United States v. Blinder*,
10 F.3d 1468 (9th Cir. 1993) ................................................................52

*United States v. Colasuonno*,
697 F.3d 164 (2d Cir. 2012) ...............................................................22

*United States v. Emory*,
314 U.S. 423 (1941)..............................................................................42

*United States v. Estate of Romani*,
523 U.S. 517 (1998)........................................................................41, 42

*United States v. Funds Held ex rel. Wetterer*,
210 F.3d 96 (2d Cir. 2000) .................................................................22

*United States v. Key*,
397 U.S. 322 (1970)..............................................................................42

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994) ....................................................................50

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)..............................................................................40

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .................................................................30

*Winter v. Natural Res. Def. Council, Inc.*,
55 U.S. 7 (2008)....................................................................................29

**Statutes**

11 U.S.C. § 105................................................................................31

11 U.S.C. § 362......................................................................5, 24, 27

11 U.S.C. § 541................................................................................27

15 U.S.C. § 78bbb...........................................................................37

15 U.S.C. § 78fff..............................................................................11

15 U.S.C. § 78fff-2 .................................................................passim

15 U.S.C. § 78*lll* ..................................................................................38

**Rules**

Fed. R. Civ. P. 24 ...............................................................................50

Fed. R. Civ. P. 83 ...............................................................................51

# GLOSSARY

| A- | Joint Appendix |
|---|---|
| Anwar | The class action brought by the Anwar Plaintiffs against the Fairfield Defendants, styled *Anwar v. Fairfield Greenwich Ltd.*, 09 Civ. 118(VM) (S.D.N.Y.) |
| Anwar Plaintiffs | The investors in the Fairfield Funds named as plaintiffs in Anwar |
| Avoidance Action | The adversary proceeding brought by the Trustee against certain of the Fairfield Defendants, styled *Picard v. Fairfield Sentry Ltd.*, No. 09-ap-01239(BRL) (Bankr. S.D.N.Y.) |
| Bankruptcy Code | 11 U.S.C. § 101 *et seq.* |
| BLMIS | Bernard L. Madoff Investment Securities LLC |
| Estate | The estate of BLMIS |
| Fairfield Defendants | Fairfield-related entities and individuals named as defendants in Anwar, namely the Fairfield Entity Defendants and the Fairfield Individual Defendants |
| Fairfield Entity Defendants | Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Limited, Fairfield Heathcliff Capital LLC, Fairfield Greenwich Advisors, LLC and Fairfield Risk Services Limited |
| Fairfield Individual Defendants | Lourdes Barreneche, Robert A. Blum, Cornelis Boele, Gregory Bowes, Vianney d'Hendecourt, Yanko della Schiava, Harold Greisman, Jacqueline Harary, David B. Horn, Richard Landsberger, Daniel E. Lipton, Julia Luongo, Mark McKeefry, Charles Murphy, Walter M. Noel, Jr., Corina Noel Piedrahita, Andrés Piedrahita, Maria Teresa Pulido Mendoza, Santiago Reyes, Andrew Smith, Philip Toub, Jeffrey H. Tucker and Amit Vijayvergiya |

| Fairfield Funds | Fairfield Sentry Ltd., Fairfield Sigma Ltd., Fairfield Lambda Ltd., Greenwich Sentry L.P. and Greenwich Sentry Partners L.P. |
|---|---|
| Injunction Action | The action brought by the Trustee seeking an order declaring Anwar void *ab initio* and/or enjoining the Settlement, styled *Picard v. Fairfield Greenwich Ltd.*, No. 12 Civ. 9408(VM) (S.D.N.Y.) |
| Madoff | Bernard L. Madoff |
| Merkin Injunction Action | The action brought by the Trustee seeking to enjoin the settlement of an action by the New York Attorney General and others against Ezra Merkin and others that managed funds that invested with BLMIS and were not affiliated with the Fairfield Defendants, styled *Picard v. Schneiderman*, No. Civ. 6733(JSR) (S.D.N.Y.) |
| Settlement | The settlement that dismisses the claims in Anwar against the Fairfield Defendants, approved by the district court by order entered March 25, 2013 |
| SIPA | Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* |
| SPA- | Special Appendix |
| Trustee | Irving H. Picard, as trustee pursuant to SIPA for the liquidation of BLMIS |
| Tr. Br. | Brief for Plaintiff-Appellant dated April 30, 2013 (ECF No. 96) |

## INTRODUCTION

The Trustee now seeks the extraordinary and drastic relief of an order declaring the Anwar class action void *ab initio* as against the Fairfield Defendants because it purportedly violates the automatic stay activated by the filing of the Trustee's bankruptcy case in 2008, and enjoining the hard-fought and district court-approved Settlement of that lawsuit. The Trustee seeks this relief for the first time now, even though Anwar has been litigated in plain view of the Trustee for over four years, and thus seeks through a belated application to nullify years of massive effort and expense by the Anwar settling parties and the district court hearing that case.

Each of the theories relied upon by the Trustee has been independently rejected by two separate federal district courts in well-reasoned opinions, one by Judge Marrero in the Injunction Action,[1] and another by Judge Rakoff in the Merkin Injunction Action.[2] The Trustee's theories fail for the most basic reason. They are based on purported rights invented by the Trustee that are nowhere to be found in the Bankruptcy Code or elsewhere in federal law. The Trustee's claim to a right to enjoin Anwar and its settlement is wholly at odds with the plain language of the automatic stay provisions of the Bankruptcy Code, the standard for a preliminary injunction under Section 105(a) of that

---

[1] *Picard v. Fairfield Greenwich Ltd.*, 490 B.R. 59 (S.D.N.Y. 2013) (SPA-1-32).

[2] *Picard v. Schneiderman*, No. 12 MC 115, --- B.R. ---, 2013 WL 1562352 (S.D.N.Y. Apr. 15, 2013).

Code, the limitations on the Trustee's authority under SIPA, and the settled law protecting rights of other litigants who are not customers of BLMIS.

Simply put, the Trustee has no legal interest in Anwar or the Settlement. The Anwar Plaintiffs, the Fairfield Defendants and the claims asserted in Anwar all are remote from the BLMIS Estate. The Anwar Plaintiffs were investors in pooled investment companies that in turn invested most but not all of their assets with BLMIS. As such, the Anwar Plaintiffs were not customers of BLMIS and did not receive transfers from BLMIS. They therefore have no customer claim against the BLMIS Estate—as strenuously argued by the Trustee elsewhere and made clear by a recent decision of this Court[3]—and are not in a position to receive any distribution from the Estate, preferential or otherwise.

The Fairfield Defendants also did not receive direct transfers from BLMIS. Rather, the Fairfield Entity Defendants received fees from the investment companies they managed, most of which came from sources that never even remotely originated with BLMIS, and in turn paid the Fairfield Individual Defendants in the form of salary or shareholder distributions.

The Anwar Plaintiffs' claims are standard shareholder causes of action premised on duties allegedly owed directly to them by the Fairfield Defendants and others, principally duties of disclosure, which are completely distinct from

---

[3] *Kruse v. Sec. Investor Prot. Corp.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 708 F.3d 422 (2d Cir. 2013).

the avoidance claims grounded in bankruptcy law asserted by the Trustee. They seek damages for losses they personally suffered and for which they have no redress against the Estate or under SIPA.

Under these circumstances, the Anwar litigation is independent of SIPA and the Trustee has no lawful right to stay it or enjoin its settlement.

Essentially, the Trustee argues that despite the complete absence of authority supporting his position, he has a property right to freeze claims against, and settlements by, any party whom he alleges received amounts, through any number of intermediate transfers, that the Trustee hopes to trace back to BLMIS, and whom he speculates may be using those amounts to pay or settle the claim, and whom he further speculates may not have sufficient resources to fully satisfy a judgment he hopes to obtain in the future. Not surprisingly, nothing in SIPA or the Bankruptcy Code provides such breathtaking authority to the Trustee.

Even if the Trustee had this all-encompassing authority, which he plainly does not, equity dictates that it not be employed here. Far from a "race to the courthouse" or a "rush to settle," Anwar was intensively litigated in the Trustee's view for almost four years before the Trustee sought to enforce his purported right to declare Anwar void *ab initio* and enjoin its settlement. As set forth below, the Trustee's attempt to excuse his inaction based on the conduct of others is contradicted by the record. He is obliged to live with the consequences of his almost four year delay, particularly where, as here, the delay enormously

3

prejudiced the parties by allowing the expenditure of tens of millions of dollars in litigating a case the Trustee now claims should have been stopped at the outset.

Excusing the delay would further prejudice the parties by nullifying or placing in limbo the hard-earned Settlement, and would result in a prodigious waste of resources by the district court. The Trustee's claim on appeal that he seeks only to delay the Settlement until his Avoidance Action against the Fairfield Defendants is concluded would not cure the prejudice. The Avoidance Action has not progressed beyond the complaint. It is unlikely to be resolved for years. Thus, at a minimum, the Anwar Plaintiffs would be prejudiced by a years-long delay in receiving settlement payments, and the Fairfield Defendants would be subject to many more years of uncertainty. More fundamentally, a prolonged stay of the Settlement could lead to its unraveling. In that event, not only would the Settlement be lost, but all post-discovery proceedings in Anwar, including any trial, would have to repeated at enormous expense to the parties. The equitable doctrine of laches was intended for this very purpose—to prevent prejudice caused by unjustifiable delay.

The Fairfield Defendants and their families had approximately $72 million invested with BLMIS when its fraud was revealed, which they lost like other investors. They also have lost their business and in many cases their livelihoods, and have been inundated with civil litigation. They agreed to the Settlement to put the Anwar claims behind them. For their part, the thousands

of Anwar Plaintiffs overwhelmingly support the Settlement, with only a handful having opted out or objected. Public policy favors settlement, and this Settlement should be preserved. The Trustee raises no basis in law or equity for four plus years of Anwar litigation to be declared void *ab initio*, or the Settlement to be scuttled or indefinitely delayed.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

1.      Whether the district court correctly held that the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362 (a)(1) and (3), does not extend to causes of action asserted by non-debtors against non-debtors that are neither "against the debtor" nor "property of the estate."

2.      Whether the district court abused its discretion in denying the Trustee's request to preliminarily enjoin a settlement where the Trustee did not even attempt to satisfy the traditional standard for a preliminary injunction.

3.      Whether the district court abused its discretion in denying the Trustee's request to preliminarily enjoin a settlement where the Trustee has not established (a) that the non-debtors funding the settlement received voidable pre-petition transfers from the debtor, (b) that the non-debtors would use those amounts to fund the settlement, (c) that the non-debtors would not have sufficient assets remaining after the settlement to fund a judgment that the Trustee hopes to obtain but has not established a likelihood of obtaining, or (d) that the settlement would have an immediate adverse economic consequence to the estate.

5

4.      Whether the district court abused its discretion in finding that the doctrine of laches bars an action to enjoin a settlement where the movant waited nearly four years to assert his purported property interest, to the prejudice of the settling parties and after enormous expenditure of judicial resources.

5.      Whether the district court correctly held that SIPA does not preempt state law claims and repeal by implication federal securities law claims asserted against non-debtors and non-customers by non-debtors and non-customers that SIPA does not protect.

6.      Whether the district court abused its discretion in denying the Trustee's motion to intervene in an action for the purpose of objecting to the settlement of the action, where the action was commenced over four years earlier and where already pending before the same district court was a separate proceeding by the Trustee to enjoin the same settlement.

7.      Whether the district court abused its discretion in denying the Trustee's request to supplement the record with respect to his motion to intervene where the Trustee's request was made after the district court already had denied the motion to intervene.

## COUNTERSTATEMENT OF THE CASE

**A.      Background**

The Fairfield Defendants' involvement in the lawsuits underlying this consolidated appeal derives from their management of the Fairfield Funds, each of which had exposure to BLMIS.  Fairfield Sentry Ltd. ("Sentry")—the largest

of the Fairfield Funds by an order of magnitude—was a private investment company organized under the laws of the British Virgin Islands ("BVI"). A-655 ¶ 32. Sentry's investors were almost entirely sophisticated, foreign, accredited investors, many of which were financial institutions. *See* Sentry Private Placement Memo. at p. 11 (Anwar, ECF No. 363-1); A-996-1005 ¶¶ 1-78. Greenwich Sentry L.P. ("GS") and Greenwich Sentry Partners L.P. ("GSP") were organized under Delaware law as limited partnerships. A-657 ¶ 39; A-658 ¶ 45. Fairfield Sigma Ltd. and Fairfield Lambda Ltd. were BVI private investment companies that invested their assets in Sentry. A-559-661 ¶¶ 51-52, 56-57.

Sentry, GS and GSP each entrusted a substantial portion of their assets to BLMIS in order to execute a proprietary investment strategy. The loss of those assets became apparent in December 2008 upon the revelation of Madoff's fraud.

The Fairfield Entity Defendants are a group of affiliated companies that were involved in the management of a large roster of investment funds, including the Fairfield Funds. A-957 ¶ 2. Most of the investment funds managed by the Fairfield Entity Defendants did not place assets with BLMIS. A-958 ¶ 3. The Fairfield Individual Defendants are or were shareholders and/or employees of the Fairfield Entity Defendants. A-958 ¶ 5. Many of the Fairfield Defendants placed their own assets in the investment funds they managed. As a result, they and their family members lost approximately $72 million as a result

of Madoff's fraud. *See* Decl. of Michael Thorne ¶¶ 6-7 (Anwar, ECF No. 363); Joint Decl. of Lead Counsel ¶ 128 (Anwar, ECF No. 1038).

The vast majority of the amount withdrawn from BLMIS by the Fairfield Funds was used to pay investor redemptions, not to compensate the Fairfield Defendants. However, like all other fund management companies, the Fairfield Entity Defendants were compensated for their services. While serving as investment manager of Sentry and general partner of GS and GSP, Fairfield Greenwich Limited and Fairfield Greenwich (Bermuda) Limited received fee payments originating from the respective bank accounts of those Fairfield Funds. A-957 ¶ 2. Those bank accounts received amounts from various sources, including subscription proceeds transferred by new investors in those Fairfield Funds and, at times, monies redeemed from those Fairfield Funds' customer accounts at BLMIS, as well as from other investments unrelated to BLMIS. A-957 ¶ 2. The Fairfield Entity Defendants also received fee payments for services provided to the other investment companies they managed that had no affiliation with BLMIS. A-958 ¶ 3.

For the six year period prior to the revelation of Madoff's fraud that the Trustee deems relevant in his Avoidance Action, the vast majority of the Fairfield entities' revenues are attributable to sources other than transfers from a BLMIS account. A-958 ¶ 4. The net revenues of the Fairfield entities were used, in part, to make salary payments and shareholder distributions, directly or

indirectly, to the Fairfield Individual Defendants and other employees and agents of the Fairfield firms.  A-958 ¶ 5.

**B.     The Anwar Action**

On December 18, 2008, Pasha S. Anwar and Julia Anwar filed a putative class action on behalf of themselves and other investors in certain Fairfield Funds in the Supreme Court of the State of New York against certain of the Fairfield Defendants.  A-974.  In January 2009, the action was removed to the United States District Court for the Southern District of New York and assigned to the Honorable Victor Marrero.  A-973-977.

On September 29, 2009, the Anwars and more than one hundred other plaintiffs filed the Second Consolidated Amended Complaint (the "SCAC"), asserting violations of the federal securities laws, specifically Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and various New York common law tort and contract claims.  A-978-1196.  In addition to the Fairfield Defendants, the SCAC named as defendants other companies that provided administrative, custodial or auditing services to the Fairfield Funds.  A-1030-1035.  The crux of the allegations in the SCAC is that the defendants directly owed certain duties to the plaintiffs and the breaches of those duties were proximate causes of the plaintiffs' investment losses.  A-993-994 ¶ 3.  With respect to the Fairfield Defendants, the plaintiffs alleged that they were negligent in performing due diligence of BLMIS and misrepresented their due diligence practices in connection with their marketing and promotion of the

Fairfield Funds. A-1041-1060. The plaintiffs requested compensatory damages for their investment losses in the Fairfield Funds, as well as the disgorgement and restitution of the compensation paid to the defendants. A-1193.

By orders dated July 29, 2010 and August 18, 2010, the district court granted in part and denied in part the defendants' motions to dismiss the SCAC. *See Anwar v. Fairfield Greenwich Ltd. (Anwar I)*, 728 F. Supp. 2d 354 (S.D.N.Y. 2010); *Anwar v. Fairfield Greenwich Ltd. (Anwar II)*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010). The Court issued two separate lengthy decisions "[b]ecause of the breadth of issues raised in Defendants' various submissions." *Anwar II*, 728 F. Supp. 2d at 387. In declining to dismiss the plaintiffs' duty-based claims, the district court observed, among other things, that "Plaintiffs' general theory is that investment managers, accountants, custodians and administrators had responsibilities to individual investors, regardless of whatever duties the Defendants owed to the Funds themselves." *Id.* at 400.

Discovery commenced in Anwar following the district court's orders on the motions to dismiss. Defendants collectively have produced over eight million pages of documents in the action. A-612. As of December 2012, the parties already had conducted depositions of over sixty witnesses. A-612-613 ¶¶ 4-5. The fact discovery period is scheduled to close at the end of June 2013. *See* Eighth Order Amending the Am. Case Mgmt. Plan & Scheduling Order at p. 1 (Anwar, ECF No. 1025).

## C.     The Trustee's Avoidance Action

BLMIS is in liquidation under SIPA.  The overarching purpose of a SIPA liquidation proceeding is "to distribute customer property and . . . otherwise satisfy net equity claims of customers to the extent" permitted by SIPA.  15 U.S.C. § 78fff(a)(1)(B).  Where customer property is insufficient to pay all customer claims in full, a SIPA trustee has statutory authority to file lawsuits to recover "property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under provisions of Title 11." *Id.* § 78fff-2(c)(3).  If, and only if, successfully recovered, "[s]uch recovered property shall be treated as customer property," *id.*, and then distributed to customers in accordance with SIPA's statutory priority scheme. *See id.* § 78fff-2(c)(1).

The Trustee has filed hundreds of adversary proceedings to recover what he alleges should have been customer property.  On May 18, 2009, the Trustee filed the Avoidance Action against GS, GSP and Sentry seeking to recover assets that he alleged were fraudulently transferred to them by BLMIS before the revelation of the BLMIS Ponzi scheme. Tr. Br. 12.  On July 20, 2010, the Trustee amended his complaint to add claims against certain of the Fairfield Defendants.  A-637-860.  The Avoidance Action has not progressed past the service of the complaint on some defendants.  A-616 ¶ 13; A-633 ¶ 15.

Setting aside the unsupported rhetoric,[4] the crux of the Trustee's allegations against the Fairfield Defendants named in the Avoidance Action is that some part of the fees they received should be characterized as subsequent transfers of voidable pre-petition transfers from BLMIS to the Fairfield Funds. A-644 ¶ 2. However, the Trustee fails to take into account that most of the fee amounts paid by the Fairfield Funds to the Fairfield Entities which he purports to seek as subsequent transfers did not originate from BLMIS but rather came from subscription amounts from investors in the Fairfield Funds and from Sentry's investments unrelated to BLMIS. A-957-959. He also fails to take into account that the vast majority of the redemptions from BLMIS were passed on to investors to satisfy their redemption requests. In short, nothing in the record substantiates the amount the Trustee claims to seek.

**D.     The Trustee's Signals that He Would Not Seek to Enjoin an Anwar Settlement**

Beginning in 2009, counsel for the Trustee and counsel for certain of the Fairfield Defendants engaged in sporadic settlement negotiations in an effort to resolve the claims asserted in the Avoidance Action. A-630 ¶ 5; A-953 ¶ 5. From time to time, counsel for the Anwar Plaintiffs were also included in those discussions to facilitate a potential three-way "global" settlement that would

---

[4] Suffice it to say that the Fairfield Defendants deny the allegations gratuitously referenced at pages 12 and 13 of the Trustee's brief. The Fairfield Defendants recognize that this appeal is not the proper forum to argue the merits of the Trustee's Avoidance Action, and thus refrain from directing the Court to the voluminous body of evidence that directly refutes the Trustee's allegations.

resolve the claims asserted by the Trustee and the Anwar Plaintiffs against the Fairfield Defendants.  A-630 ¶ 5.

Contrary to the Trustee's unsupported assertion, counsel for the Fairfield Defendants were led to believe that the Trustee would *not* seek to enjoin a settlement of Anwar.  A-953 ¶ 4.  When discussions relating to a global settlement reached an impasse, counsel for the Fairfield Entity Defendants advised counsel for the Trustee on April 3, 2012 that they might explore a stand-alone settlement of Anwar.  *Id.*  Counsel for the Trustee replied that such a course of action could make it easier for the Trustee and the Fairfield Defendants to reach a settlement in the future as any subsequent settlement would not require the Trustee to share settlement proceeds with the Anwar Plaintiffs.  *Id.*  This communication is not contested in the record.  Following that conversation, between May 21, 2012 and August 3, 2012, counsel engaged in intensive settlement negotiations with counsel for the Anwar Plaintiffs in an effort to resolve the Anwar litigation.  A-1201.

Other circumstances further suggested that the Trustee did not intend to seek to enjoin a settlement of Anwar.  The Anwar action was heavily litigated for more than four years with no objection by the Trustee.  The Trustee sat idly by even though he knew that, in defending Anwar, the Fairfield Defendants were obliged to expend millions in defense costs that under the Trustee's theory, belatedly asserted here, should have been frozen in his favor.  In the same period, the Trustee filed actions to enjoin other lawsuits that he claimed

13

threatened the interests of the Estate.  *See Fox v. Picard (In re Madoff)*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010); *Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*,460 B.R. 106 (Bankr. S.D.N.Y. 2011); *Picard v. Stahl (In re Bernard L. Madoff Inv. Sec. LLC)*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011).  Indeed, certain of the Fairfield Defendants—Mssrs. Noel and Tucker—were named as defendants in one such proceeding, yet the Trustee specifically exempted the claims asserted against them from the scope of his application to enjoin the action.  A-549-575; A-604-607.

E.     **The Anwar Settlement**

The Anwar Settlement was finalized, subject to court approval, on November 6, 2012, through the execution of a Stipulation of Settlement (the "Stipulation"), which was filed with the district court the same day.  A-1197-1314.  The Stipulation provides for the dismissal of all claims asserted in Anwar against the Fairfield Defendants as well as customary releases of other related claims.  A-1225 ¶ 24.  In return, the settling Fairfield Defendants agreed to transfer $80.25 million in assets into escrow subject to the parties' joint control and provide other specified non-monetary consideration.  A-1216-1218 ¶¶ 2-8.  The parties agreed that the first $50.25 million, less fees and expenses, would be distributed to the settlement class upon court approval of the Settlement and dismissal of any appeals resulting therefrom.  A-1216-1217 ¶¶ 3-4; A-1227-1228 ¶ 29.  The remaining $30 million will remain in escrow to satisfy judgments or settlements arising from certain specified claims against the

14

Fairfield Defendants, including the claims asserted by the Trustee in the Avoidance Action. A-1222 ¶ 18. In the event that all or some of the $30 million is not used to satisfy such judgments or settlements, it will be distributed to the Anwar settlement class. A-1228 ¶ 30.

After court-ordered notice and an extensive period to act, only three of the several thousand settlement class members elected to opt-out of the Settlement, and only four class member objections were filed. A-1495-1497.

**F.  The Trustee's Belated Effort to Interfere with Anwar**

**1.  The Trustee Files the Injunction Action**

On November 29, 2012, the Trustee filed the Injunction Action in the United States Bankruptcy Court for the Southern District of New York seeking an order declaring Anwar void *ab initio* or enjoining the Settlement. In his opening brief, the Trustee argued for the first time that Anwar violated the automatic bankruptcy stay entered almost four years earlier in the bankruptcy court. He alleged that the Anwar Plaintiffs asserted "disguised" fraudulent transfer claims against the debtor BLMIS, sought to exercise control over claims that allegedly belonged to the BLMIS Estate, and sought to recover funds from the Fairfield Defendants allegedly derived from transfers by BLMIS. Alternatively, the Trustee argued that the Settlement and the further prosecution of Anwar should be enjoined pending the resolution of the Avoidance Action based on a number of novel theories, again claiming for the first time that Anwar negatively affects the BLMIS Estate and threatens the

bankruptcy court's jurisdiction. In his reply brief, the Trustee raised an additional novel argument claiming that SIPA somehow preempts the state law and Exchange Act claims the Anwar Plaintiffs asserted in Anwar.

The Anwar Plaintiffs and Fairfield Defendants timely moved to withdraw the reference to the bankruptcy court. A-608-610; A-617-626. Following the filing of that motion, the Injunction Action was designated as related to Anwar in the district court and assigned to Judge Marrero. A-11. On February 6, 2013, Judge Marrero granted the motion to withdraw the reference. A-961-972. The Trustee's motion for a preliminary injunction was fully briefed in the district court as of February 25, 2013. A-15.

### 2. The Trustee Seeks to Intervene in Anwar

On November 30, 2012, the district court granted preliminary approval of the Settlement. The district court's order set forth a briefing schedule on final approval—directing all objections by settlement class members to be filed by February 15, 2013—and scheduled the final hearing for March 22, 2013. A-1317 ¶ 6; A-1323 ¶ 23.

By letter dated February 26, 2013—nearly four months after the announcement of the Settlement and well after the court-imposed deadline for objections to the Settlement—the Trustee requested that Judge Marrero schedule a conference to address his intention to file a motion for limited intervention in Anwar for the purpose of filing an objection to the Settlement. A-1464-1466. In his letter, the Trustee explained that he sought to intervene in

Anwar to lodge an objection to the Settlement "on similar grounds" as those presented in the Injunction Action.  A-1466.

On March 8, 2013, the court denied the Trustee's request for a conference, deemed his letter a motion to intervene and denied the motion. SPA-33-36.  In denying the motion to intervene, the Court found that intervention was "not necessary to protect the Trustee's alleged interest" because the Trustee's arguments to enjoin the Settlement already were before the Court in the Trustee's Injunction Action and companion motion to enjoin. SPA-35.  The court also found the Trustee's request for intervention untimely because it came "nearly four years after the Trustee had notice of any alleged interest and less than one month prior to the final fairness hearing."  SPA-35.

On March 12, 2013, after the motion to intervene had been denied, the Trustee wrote the district court requesting permission to supplement the record with respect to his motion to intervene.  In his letter, the Trustee made clear that he was not requesting reconsideration, but only permission to file certain documentation "to provide further context" for the district court's decision denying his motion to intervene.  *See* Letter to Hon. Victor Marrero at p. 1 (Anwar, ECF No. 1080).  On March 15, 2013, the district court denied the Trustee's request to supplement the record.  SPA-38.

**3.    The District Court Dismisses the Injunction Action and Approves the Settlement**

By decision and order dated March 20, 2013, the district court denied the Trustee's motion to declare *Anwar* void *ab initio* or enjoin the Settlement. SPA-1-32.  The court held that *Anwar* did not violate the automatic stay, finding that the claims asserted in *Anwar* are neither "property of the estate" nor "against the debtor," and that assets in the possession of the Fairfield Defendants are not "property of the estate."  SPA-11-21.

The court also declined to issue a preliminary injunction.  The court found that the Trustee had not "established that the Anwar Plaintiffs' claims against the non-debtor Fairfield Defendants will have an immediate adverse economic consequence on the debtor BLMIS estate."  SPA-21.  In addition, while noting that it was made for the first time on reply, the district court rejected the merits of the Trustee's preemption argument.  It held that "Congress did not intend . . . the Trustee to employ his authority under SIPA to subjugate independent legal claims bearing no direct relation to the administration of the bankruptcy estate itself" and noted that a contrary result "would grant unprecedented power to a bankruptcy trustee."  SPA-28-29.

Finally, the court held that the Trustee was barred by laches from obtaining the sought after relief.  The court reasoned that the Trustee "should have sought relief long ago rather than delaying more than four years only to file the [Injunction Action] on the eve of settlement, resulting in enormous

18

prejudice to the [parties to Anwar]." SPA-30-31. The Court acknowledged that the Trustee sought to justify his four-year delay in asserting his purported right based on previous discussions regarding a "global" settlement between the Trustee, the Anwar Plaintiffs and the Fairfield Defendants, but found that such discussions "do not excuse such an excessive delay" for which it found "no reasonable justification." SPA-30-31.

On March 22, 2013, the district court conducted a hearing on the fairness of the Settlement. A-1474-1564. It entered an order approving the settlement on March 25, 2013. SPA-40-54.

## SUMMARY OF THE ARGUMENT

The district court appropriately denied the Trustee's belated effort to stay or enjoin Anwar. The BLMIS Estate has no present legal interest in the assets involved in the Settlement or the claims being dismissed under the Settlement.

First, Anwar does not violate the automatic stay. The claims in Anwar are not asserted "against the debtor" and thus do not implicate 11 U.S.C. § 362(a)(1). Rather, the Anwar claims are asserted against the Fairfield Defendants. The Anwar claims are not disguised "fraudulent conveyance" claims. It is evident on their face that they are standard shareholder claims under state and federal law premised on alleged duties owed directly to the Anwar Plaintiffs by the Fairfield Defendants seeking damages for the Anwar Plaintiffs' investment losses in the Fairfield Funds. Because the Trustee has no

right to assert such claims on behalf of the Anwar Plaintiffs, they are not "property of the estate" and thus do not implicate 11 U.S.C. § 362(a)(3).

Second, the district court did not abuse its discretion in denying the Trustee's motion to enjoin the Settlement under Bankruptcy Code Section 105(a). The Trustee did not even attempt to satisfy the standards for a preliminary injunction. He made (and makes) no showing of likelihood of success on the merits of his Avoidance Action against the Fairfield Defendants, irreparable injury, or that the balance of equities tip in his favor. This alone should defeat his claim.

A Section 105(a) injunction also properly was denied because nothing in SIPA or any other law gives preference to the Trustee's claims against the Fairfield Defendants. And even if the Trustee's claims were entitled to preference, the Trustee failed to establish that the resolution of the claims asserted in Anwar would cause an immediate economic impact on the BLMIS Estate.

The Trustee's argument that to obtain a Section 105(a) injunction he need only show the Settlement would cause an immediate adverse economic consequence on the BLMIS Estate is wrong as a matter of law. Even if it were the law, it would not avail the Trustee because, as the district court correctly found, he has not met his burden of establishing an immediate adverse economic consequence on the Estate. In fact, the Trustee has not established any effect on the Estate whatsoever. The Fairfield Defendants' assets are not

property of the Estate, so directing some of those assets to the Settlement will not cause any immediate effect on the Estate. There also has been no showing that the BLMIS Estate ever will establish an entitlement to any of the Fairfield Defendants' assets, or if such entitlement ever is established, that the assets being used to fund the Settlement came from BLMIS or that the Fairfield Defendants' remaining assets would be insufficient to satisfy any judgment the Trustee might obtain. Thus, the Trustee has utterly failed to make the factual showing necessary to obtain an injunction.

Third, SIPA does not preempt the state law or repeal by implication the federal securities law claims asserted by the Anwar Plaintiffs. They are entirely distinct remedial systems that have worked in tandem with SIPA for decades.

Fourth, the district court did not abuse its discretion in finding dismissal of the Injunction Action appropriate under the equitable doctrine of laches. Anwar had been actively litigated for nearly four years in public view and at great expense to the court and the litigants before the Trustee sought to stop it. The Trustee's arguments for why the action should be stayed and/or enjoined were known to him from the outset. In addition, the Trustee's excuse for his delay is contradicted by the record and further undermined by his similarly unexcused delay in seeking to enjoin the settlement underlying the Merkin Injunction Action. Based on the facts before the district court, it was well within its discretion in finding the Trustee's delay unjustified.

Fifth, the district court did not abuse its discretion in denying the Trustee's request to intervene in Anwar, where the validity of the Trustee's alleged property interest in Anwar was already being addressed by the same district court in the Trustee's Injunction Action. The request to intervene was also untimely because the Trustee improperly delayed for almost four years before asserting his professed rights.

Finally, the district court did not abuse its discretion in denying the Trustee's request to supplement the record for purposes of his contemplated appeal of the denial of his request to intervene. Documents not before the district court at the time of its decision are not appropriate for inclusion in the record on appeal.

Each of the district court's orders should be affirmed.

## COUNTERSTATEMENT OF THE STANDARD OF REVIEW

The scope of the automatic stay is a question of law subject to *de novo* review, *see United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012), but factual findings are reviewed for clear error, *see United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000).

The denial of a motion for a preliminary injunction is reviewed deferentially for abuse of discretion. *Pope v. County of Albany*, 687 F.3d 565, 570 (2d Cir. 2012). The district court's decision will be upset only when it "rests on an error of law or a clearly erroneous finding of fact." *Id.* at 571.

District court rulings regarding laches are reviewed for abuse of discretion.[5] *See Burnett v. N.Y. Cent. R.R.*, 380 U.S. 424, 435 (1965); *Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir. 2003); *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994). The Trustee mistakenly points to cases in which the doctrine of laches was the basis for granting a motion for summary judgment, which are not applicable here. And even in the context of summary judgment, this Court has questioned whether the *de novo* standard would apply to a finding of laches. *See Brown v. Quiniou*, 467 F. App'x 13, 14 (2d Cir. 2012) (summary order).

This Court reviews a district court's denial of a motion to intervene for abuse of discretion. *See MasterCard Int'l Inc. v. VISA Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 83 (2d Cir. 2001). The denial of a motion to supplement the record is also reviewed for abuse of discretion. *See Baguer v. Spanish Broad. Sys., Inc.*, 423 F. App'x 102, 103 (2d Cir. 2011) (summary order). This Court also reviews a district court's decision to approve a settlement under the deferential abuse of discretion standard. *See D'Amato*, 236 F.3d at 85.

## ARGUMENT

## I. Anwar Does Not Implicate the Automatic Stay

Through a series of mischaracterizations regarding the nature of the claims asserted in *Anwar*, the Trustee argues that some of those claims are

---

[5] While the Trustee claims that the issue of laches is subject to *de novo* review, he argues that the body of the brief that the district court abused its discretion. Tr. Br. 61.

actually "creatively pleaded" claims "against the debtor" in violation of 11

U.S.C. § 362(a)(1), and at the same time are "property of the estate" in violation

of 11 U.S.C. § 362(a)(3).[6] They are neither, but rather standard shareholder

claims premised on alleged breaches of duty by the Fairfield Defendants. Since

the Anwar claims are quite clearly neither made against the debtor BLMIS nor

property of the Estate, they are not covered under the plain language of the

statute providing for the automatic stay.

### A.    Section 362(a)(1) Does Not Apply

Subsection 362(a)(1) of the Bankruptcy Code stays the commencement or

continuation of a judicial "action or proceeding *against the debtor* that was or

could have been commenced before the commencement of the case under [Title

11], or to recover a claim *against the debtor* that arose before the

commencement of the case under [Title 11]." 11 U.S.C. § 362(a)(1) (emphasis

added). Here, the debtor is BLMIS. The Anwar action does not state claims

against BLMIS or the Estate. Simply, it is not an action "against the debtor"

and therefore does not implicate 11 U.S.C. § 362(a)(1). *See Koolik v.*

*Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994); *Teachers Ins. & Annuity Ass'n of*

*Am. v. Butler*, 803 F.2d 61, 65-66 (2d Cir. 1986).

The Trustee completely mischaracterizes the factual allegations made and

claims pleaded in Anwar to argue that Anwar involves disguised fraudulent

---

[6] The Trustee also argued in the district court that Anwar violated 11 U.S.C. § 362(a)(6), but
appears to have abandoned that argument before this Court.

transfer claims "against the debtor."  He does so in a transparent effort to shoehorn the action into this Court's holding in *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992).  *Colonial Realty* affirmed the application of the bankruptcy stay to a fraudulent transfer claim asserted against a non-debtor.  However, as the district court correctly held, it involved a "unique set of circumstances" not present here.  SPA-12.  In fact, this Court's reasoning in *Colonial Realty* supports the conclusion that Anwar does not violate the automatic stay.

In *Colonial Realty*, the FDIC, as receiver for a group of failed banks, filed an action against a non-debtor seeking to avoid certain pre-petition transfers pursuant to the FDIC's statutory authority as receiver.  The trustee for the debtor estate moved the bankruptcy court for an order enforcing the automatic stay as to the FDIC's action, which the bankruptcy court granted.  This Court affirmed, holding that although the property at issue was not "property of the estate" until it was successfully recovered by the trustee, the fraudulent conveyance claim was an action "against the debtor" within the meaning of 11 U.S.C. § 362(a)(1).  *In re Colonial Realty*, 980 F.2d at 132.  The Court reasoned that "the FDIC is clearly seeking to recover a claim against [the debtor]" because the FDIC "specifically alleges that [the debtor] is liable to the FDIC as a result of loans made by the failed banks, and that the named defendants are liable as fraudulent transferees of [the debtor]."  *Id.*  "[I]f [the debtor] were not

liable to the FDIC," the Court added, "*the FDIC would have no independent claim against these defendants*." *Id.* (emphasis added).

The Anwar action is fundamentally different than *Colonial Realty*. The Anwar Plaintiffs do not assert in the SCAC, directly or indirectly, that the BLMIS Estate is liable to them. They do not seek in the SCAC to void money transfers originating from BLMIS, but instead request compensatory damages for the Anwar Plaintiffs' investment losses and disgorgement of fees earned by the Fairfield Defendants from the Fairfield Funds. A-1193-1194.

Also, contrary to the Trustee's unsupported assertion, the Anwar Plaintiffs do not allege in the SCAC that the Fairfield Defendants knowingly participated in the BLMIS fraud. Instead, the claims asserted in Anwar are premised on alleged breaches of duties purportedly flowing directly from the Fairfield Defendants to the Anwar Plaintiffs in connection with the Fairfield Defendants' marketing and management of the Fairfield Funds. A-993-994 ¶ 3. Such independent claims are exactly what this Court found lacking when it affirmed the enforcement of the automatic stay in *Colonial Realty*. These independent claims, together with the absence of any claims "against the debtor" or otherwise contingent on liability of BLMIS, prevents the application of *Colonial Realty* and 11 U.S.C. § 362(a)(1).

### B.  Section 362(a)(3) Does Not Apply

Subsection 362(a)(3) of the Bankruptcy Code extends the automatic stay to "any act to obtain possession of property of the estate or of property from the

estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The Bankruptcy Code defines "property of the estate" to include "all legal or

equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. § 541(a)(1).

The district court made two correct rulings with respect to the Trustee's

attempted invocation of 11 U.S.C. § 362(a)(3): (1) that the Trustee had "not

established that the [Settlement] seeks to recover from property belonging to the

BLMIS estate"; and (2) "the Anwar Plaintiffs' claims are wholly independent

from the BLMIS estate and therefore would not qualify as 'property of the

estate' under 11 U.S.C. § 541 (a)(1)." SPA-18.

With respect to the former, the district correctly observed, adhering to

*Colonial Realty*, that prepetition transfers do not become "'property of the

estate' unless and until they are recovered through a successful avoidance

action." SPA-16. For that reason, the mere fact that the Trustee has alleged but

not proven that the Fairfield Defendants are in possession of fraudulently

transferred assets does not render Anwar in violation of the automatic stay. The

Trustee does not appear to challenge that ruling in this appeal.

Instead, the Trustee focuses on the latter ruling, arguing that the direct

shareholder claims in Anwar are somehow equivalent to the Trustee's

fraudulent transfer claims against the Fairfield Defendants. Tr. Br. 57. But as

set forth above, the claims asserted in Anwar are standard shareholder claims

that are wholly different from and independent of the bankruptcy-law based

27

fraudulent transfer claims asserted by the Trustee. They are grounded in alleged duties owed by the Fairfield Defendants directly to the Anwar Plaintiffs for damages they sustained as a result of their investments in the Fairfield Funds.

Not only are these claims not "property of the estate" on their face, such claims cannot be "property of the estate" because neither the Trustee nor the Estate has standing to assert these claims on behalf of the Anwar Plaintiffs. *See Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011) (the Trustee put forth a "number of convoluted theories" to attempt to establish standing to bring common law claims against third parties, none of which pass muster); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (where investors "have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so"); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 n.4 (2d Cir. 1985) ("[A bankruptcy trustee] has no standing to assert claims of damage to the defrauded purchasers of securities.").

The Trustee cannot dispute this settled law. Instead, he attempts to confuse the issue by observing that the claims found subject to the automatic stay in *Colonial Realty* belonged not to the bankruptcy trustee but rather "exclusively to the FDIC as receiver." 980 F.2d at 130. However, the *Colonial Realty* Court affirmed the stay of the FDIC's claims pursuant to Section 362(a)(1) of the Bankruptcy Code as an action "against the debtor." *Id.* at 132. It did not find that such claims were "property of the estate" under Section

362(a)(3).  *Id.* at 131.  Thus, whether the bankruptcy trustee had standing to assert the FDIC's claims was irrelevant to the Court's decision.

Finally, the Trustee mistakenly argues that the district court erred in its "assertion that the Anwar Plaintiffs are not creditors of BLMIS and therefore not subject to the automatic stay."  Tr. Br. 57.  The district court made no such assertion, and the Trustee's attempt to fabricate a perceived error of law should be rejected out of hand.  The district court merely distinguished Anwar from other cases relied on by the Trustee in which the plaintiffs asserted creditor claims for injuries shared by all customers of BLMIS.  SPA-9-10.

## II.   The District Court Did Not Abuse its Discretion in Declining to Grant a Preliminary Injunction Under Section 105(a) of the Bankruptcy Code

### A.   The Trustee Has Not Attempted to Satisfy the Standards for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 55 U.S. 7, 24 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 55 U.S. at 20.

The Trustee has made no attempt to satisfy these long-standing requirements for a preliminary injunction.  He has offered no evidence, or even

argument, to show that he is likely to prevail in the Avoidance Action against the Fairfield Defendants, which remains in its infancy and is subject to formidable defenses.[7]  In addition, "merely alleging an opponent's inability to pay damages," as the Trustee does here, "does not constitute irreparable harm." *Rosewood Apartments Corp. v. Perpignano*, 200 F. Supp. 2d 269, 278 (S.D.N.Y. 2002); *see also JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79-80 (2d Cir. 1990).

The equities also weigh strongly against an injunction as it would put at risk the arms-length Settlement the Anwar parties worked to obtain through years of laborious and costly litigation while the Trustee sat on his hands.  And, the public interest favors settlement, particularly in the context of complex class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

---

[7] The claims by the Trustee against the Fairfield Defendants have not proceeded beyond his complaint.  Should they be litigated, to succeed on his core constructive fraudulent transfer claim, the Trustee will have to prove the dubious proposition that the Fairfield Defendants had actual knowledge of the BLMIS Ponzi scheme in the face of the fact that they invested and lost millions of dollars of their own and family money with BLMIS.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Securities LLC (In re Madoff)*, No. 12 MC 0115, 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013); *Picard v. Katz*, 462 B.R. 447, 454 (S.D.N.Y. 2011) ("[E]ven the Trustee does not appear to undertake the dubious task of plausibly pleading that the defendants knowingly invested in a Ponzi scheme.").  Not surprisingly, the Trustee's complaint in the Avoidance Action contains no factual allegations to support such a claim.  His claims also are subject to the defenses that he lacks standing to prosecute common law claims for injuries suffered by third parties, *see, e.g.*, *Picard v. HSBC Bank PLC*, 454 B.R. 25, 37 (S.D.N.Y. 2011), and that SLUSA preempts them, *see, e.g.*, *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 378 (S.D.N.Y. 2011).  The Trustee must also overcome the defense that he may not avoid transfers occurring outside of the United States because SIPA and the Bankruptcy Code do not apply extraterritorially.  *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010).

Rather than attempt to satisfy these established criteria, the Trustee contends that a preliminary injunction is appropriate under 11 U.S.C. § 105(a) upon the mere showing that a third-party action against a non-debtor "will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). This proffered standard is entirely inconsistent with the "test historically employed by courts of equity" and plainly insufficient to justify grant of a preliminary injunction. *Salinger*, 607 F.3d at 74-75 (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006)).

Even were this not so, as set forth below, contrary to the Trustee's argument here, the district court did consider that specialized standard and properly found that the Trustee did not meet it.

### B. The Trustee Failed to Meet Any Specialized Requirement for a Section 105(a) Injunction

Section 105(a) of the Bankruptcy Code provides that a court "*may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a) (emphasis added). The decision whether to use that authority is left to the discretion of the court. *See Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007). That discretion has limitations. Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Solow v.*

*Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) (quoting *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)).

A fundamental problem with the Trustee's request for a Section 105(a) injunction and his argument on appeal is that he fails to identify any legal authority, under SIPA or otherwise, for his presumption that the claims of the BLMIS Estate are entitled to priority over those asserted by the Anwar Plaintiffs. Notably, in the lengthy section of his brief devoted to his argument that the Settlement is inconsistent with SIPA, the Trustee fails to point to any language in SIPA or any case interpreting it that gives him such priority. Tr. Br. 39-54.

That is because, contrary to the Trustee's unsupported position, the law in this Circuit is clear that assets in the possession of third-parties that are merely alleged to have been fraudulently transferred by the debtor are not considered "property of the estate" unless and until actually recovered through a judgment entered in an avoidance action. *See FDIC v. Hirsch (In re Colonial Realty)*, 980 F.2d 125, 131 (2d Cir. 1992) (holding that property subject to the trustee's avoidance powers "is not to be considered property of the estate until it is recovered"); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No 12 Misc. 115, 2012 U.S. Dist. LEXIS 78804, at *27 (S.D.N.Y. May 15, 2012) ("[P]roperty the debtor has fraudulently transferred does not become part of the estate until the bankruptcy trustee has recovered it.").

Consistent with this authority, SIPA does not deem transferred property pursued in an avoidance action to be "customer property" unless and until it is successfully recovered by the Trustee. *See* 15 U.S.C. § 78fff-2(c)(3); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 271-272 (Bankr. S.D.N.Y. 2010); *Picard v. Stahl (In re Bernard L. Madoff Inv. Sec. LLC)*, 443 B.R. 295, 311 n.19 (Bankr. S.D.N.Y. 2011) ("[T]ransferred property becomes 'customer property' only following a successful avoidance action.").

With no recognized property interest in the assets at issue, the Trustee stands in the same position as any other litigant seeking to assert claims against the Fairfield Defendants. *Cf. In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001) ("Simply because [the trustee] is a trustee in bankruptcy does not arm him with super-plaintiff powers in causes of actions between third parties."). Simply put, the invocation of Section 105(a) to enjoin the Settlement would give the Trustee rights that are not conferred to him by SIPA or the Bankruptcy Code. The use of Section 105(a) in such manner is exactly what this Court has forbidden. *See In re Kalikow*, 602 F.3d at 96.

The Trustee also has not met his burden of establishing that the Settlement would have an immediate adverse economic impact on the BLMIS Estate. First, the Fairfield Defendants' assets are not customer property under SIPA, and therefore the Settlement's *immediate* effect on the Estate is nil. The Trustee also has not established that he ever will have any right to any assets held by the Fairfield Defendants, and the available defenses suggest that he will

33

fail. *See supra* n.7. Even if he had established such a right, he has not established that after the Settlement the remaining assets of the Fairfield Defendants, together with the $30 million held in escrow pursuant to the Settlement, will be insufficient to satisfy the Trustee's claims. Instead, the Trustee relies entirely on vague and conclusory assertions that the Fairfield Defendants have "very limited resources" and that the Anwar Action allegedly seeks to recover from "the same pool of limited assets." Such vague allegations fall far short of the proof required to establish the right to the extraordinary and drastic remedy of a preliminary injunction. *See Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (a preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997))).

## C. The Cases Cited By the Trustee Do Not Warrant Reversal

This Court's summary order in *Lautenberg* does not support a reversal of the district court here. First, the *Lautenberg* Court recognized that the district court on a motion for a preliminary injunction can be reversed only for abuse of discretion. *See Picard v. Lautenberg (In re Bernard L. Madoff Inv. Sec., LLC)*, No. 11-5421, 2013 WL 616269, at *1 (2d Cir. Feb. 20, 2013) (summary order). Just as the *Lautenberg* Court found that the district court was "within its discretion in granting the challenged injunction," the same deference to the district court's conclusion is called for here. *Id.*

34

Second, the factual dissimilarities between Anwar and the actions

enjoined in *Lautenberg* explain why the district courts reached different

conclusions on whether an injunction was appropriate.  There, the actions the

Trustee sought to enjoin were against Madoff family members.  The bankruptcy

court found that each of the actions was based entirely on the plaintiffs' status

as a customer or creditor of BLMIS and that, as a result, there was "no

independent basis for their claims."  *Stahl*, 443 B.R. at 310.  In addition, the

bankruptcy court found that certain of the Madoff defendants had worked for

BLMIS "for the entirety of their professional lives," none "has any apparent

income other than that derived from BLMIS and related entities," and therefore

almost all of their assets were expected to be returned to the Estate.  *Id.* at 316.

Those circumstances stand in stark contrast to those present here, where the

Anwar Plaintiffs assert claims based on alleged duties wholly distinct from

whatever creditor status they may have in the SIPA proceeding, and the record

is undisputed that the vast majority of the Fairfield Defendants' income and

assets derived from sources other than transfers from BLMIS.  *See supra*

Counterstatement of the Case, Section A; *see also* A-957-58.

The Trustee's attempt to analogize this action to the Seventh Circuit's

decision in *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), fails for similar

reasons.  There, the plaintiffs in the lawsuit the trustee sought to enjoin stood

"in exactly the same position as the rest of the aggrieved investors" in the

debtor, and asserted claims against accomplices of the debtor for identical

harms. *Id.* at 881. Although the court speculated that plaintiffs may be able to identify a distinct injury, it reinstated the bankruptcy court's injunction because plaintiffs were "creditors with claims so closely related to the [debtor's] estate." *Id.* Here, the Anwar Plaintiffs' are not customer-creditors of the BLMIS Estate, and bring claims against the Fairfield Defendants for alleged injuries that are completely distinct from those sustained by customers of BLMIS.[8]

### D.    The Court Did Not Commit an Error of Law

The Trustee's argument that the district court erred in holding that the Anwar Plaintiffs are not creditors of the BLMIS Estate misses the mark. The Anwar Plaintiffs did not have direct investments in BLMIS and therefore have no customer claims against it. *Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422, 425 (2d Cir. 2013). They also have not asserted any other claims against BLMIS or its estate, and the viability of any phantom claims posited by the Trustee is utterly speculative. The Ninth Circuit case relied on by the Trustee—*Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214 (9th Cir. 1988)—is inapposite. That case involved a direct transferor to a debtor Ponzi scheme who was found to have had a claim against the debtor under a contract to purchase property. *Id.* at 1218. Here, the Anwar

---

[8] Even if the circumstances in *Fisher* were similar to those presented here, which they are not, the fact that another court reached an opposite conclusion does not render the district court's decision an abuse of discretion. *See Columbia Pictures Indus., Inc. v. Am. Broad. Cos.*, 501 F.2d 894, 897 (2d Cir. 1974) ("[W]hile another judge might have arrived at a different result, we cannot say that this result constitutes an abuse of the wide discretion normally accorded a district court on the issue of preliminary relief.").

Plaintiffs had no such direct dealings with BLMIS. Even if they asserted the civil racketeering claims the Trustee suggests they may have, Tr. Br. 36, the Anwar Plaintiffs would be creditors of the "general estate" of BLMIS, still would not be treated as "customers" under SIPA, and therefore still would not be treated as claimants in the SIPA liquidation. *See Kruse*, 708 F.3d at 425; 15 U.S.C. § 78fff-2(c)(1).

In any event, the Trustee's argument is beside the point. The key point recognized by the district court is that the Anwar Plaintiffs are asserting claims wholly independent of whatever creditor status the Trustee speculates they may have. This critical factor distinguishes this case from others, such as *Lautenberg* and *Fisher*, where customer-creditors asserted general claims based "entirely on each plaintiff's status as such." *Stahl*, 443 B.R. at 310.

## III. SIPA Does Not Preempt Independent Federal and State Law Claims

The district court was correct in holding that SIPA does not preempt the federal and state laws from which the Anwar Plaintiffs' claims arise. Notably, far from displacing the Exchange Act, SIPA is an amendment to and part of the Exchange Act. 15 U.S.C. § 78bbb. When confined to its actual text and construed based on the governing authority, SIPA does not conflict with, and in fact compliments, the remainder of the Exchange Act and the state contract and tort laws relied on by the Anwar Plaintiffs. Because the Anwar Plaintiffs' claims and the assets to be disbursed by the Settlement are not subject to the SIPA scheme, they cannot be subjugated to the Trustee's claims.

### A.     SIPA Does Not Preempt State Law

SIPA does not contain an express statement that it preempts state law claims.  Therefore, there are only two bases for finding preemption.  "First, when Congress intends that federal law occupy a given field, state law in that field is pre-empted." *California v. ARC Am. Corp.*, 490 U.S. 93, 100 (1989). Second, the state law is preempted to the extent it "actually conflicts with" SIPA, that is, when compliance with both is impossible, or when "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 100-01 (internal quotation marks omitted). Courts "have long presumed that Congress does not cavalierly pre-empt state law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  The Trustee thus faces a heavy burden in establishing preemption.  *Id.*; *Collins v. S. New England Tel. Co.*, 617 F. Supp. 2d 67, 81 (D. Conn. 2009) ("Actions in tort and contract are the bedrock upon which the common law is built, and thus [the movant] faces a heavy burden in seeking to preempt those actions.").

The Trustee's argument that the Anwar Plaintiffs' state law claims and SIPA are in conflict mischaracterizes the scope of SIPA and the role of the Trustee.  SIPA's priority scheme relates only to "customer property *of the debtor*," 15 U.S.C. § 78fff-2(c)(1) (emphasis added), which includes, among other things, "property *of the debtor* which, upon compliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers." *Id.* § 78*lll*(4)(E) (emphasis added).  Customer property, as defined

38

by SIPA, does not include assets held by third parties. SIPA does not create a presumption that transferred property will eventually become customer property, nor does it confer any preferential rights to the Trustee in seeking to recover transferred property. Indeed, the statute makes clear that "[w]henever customer property is not sufficient to pay in full" recognized claims under its priority scheme, then "the trustee may recover any property transferred by the debtor" that would have been customer property but for such transfer, only "if and to the extent such transfer is voidable or void under the provisions of Title 11." *Id.* § 78fff-2(c)(3). If the SIPA trustee prevails and recovers such property, then, and only then, "[s]uch recovered property shall be treated as customer property." *Id.* Accordingly, as non-debtors, the Fairfield Defendants assets are wholly outside of SIPA's framework. Independent claims seeking to obtain those assets, like those asserted by the Anwar Plaintiffs here, do not stand as an obstacle to SIPA's execution.

## B. SIPA Did Not Repeal Exchange Act Claims

To determine that the Trustee's claims take priority over the Anwar Plaintiffs' Exchange Act claims, this Court would have to conclude not that SIPA preempts such claims, but that SIPA repealed by implication the Exchange Act with regard to claims asserted by the Anwar Plaintiffs. *See Tufariello v. Long Island R. R.*, 458 F.3d 80, 86 (2d Cir. 2006) ("The [preemption] doctrine is inapplicable to potential conflict between two federal statutes."); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("One

federal statute does not preempt another.  When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other . . . .") (citations omitted).  "[R]epeal by implication is a rare bird."  *Randolph*, 368 F.3d at 730.  "[A]n implied repeal will only be found where provisions in two statutes are in irreconcilable conflict or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute."  *Branch v. Smith*, 538 U.S. 254, 273 (2003) (citations omitted).  Because "courts are not at liberty to pick and choose among congressional enactments," where two federal statutes are capable of coexistence, it is the duty of the courts to give effect to both.  *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

As discussed above, there is no conflict between SIPA and the claims asserted by the Anwar Plaintiffs.  At most, SIPA and the Anwar Plaintiffs' Exchange Act claims are "overlapping and not entirely congruent remedial systems" for remedying alleged misconduct in the securities markets.  *See Randolph*, 368 F.3d at 731.  Whether such systems "can coexist is a question with a long history at the Supreme Court, and an established answer:  yes."  *Id.* (citing *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999); *General Motors Acceptance Corp. v. United States*, 286 U.S. 49 (1932); *United States Shipping Bd. Emergency Fleet Corp. v. Rosenberg Bros. & Co.*, 276 U.S. 202 (1928); *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Heintz v. Jenkins*, 514 U.S. 291 (1995)).  In *Randolph*, for example, the

Seventh Circuit held that the Bankruptcy Code and the Fair Debt Collection Practices Act (FDCPA) "overlap, each with coverage that the other lacks—the Code covers all persons, not just debt collectors, and all activities in bankruptcy; the FDCPA covers all activities by debt collectors, not just those affecting debtors in bankruptcy." *Id.* at 731. Such "[o]verlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both." *Id.* Like the statutes at issue in *Randolph*, SIPA and the laws under which the Anwar Plaintiffs bring claims are not in conflict; they "are simply different rules, with different requirements of proof and different remedies." *Id.* at 732.

The Trustee relies almost exclusively on *United States v. Estate of Romani*, 523 U.S. 517 (1998). Far from being "precisely on point" as the Trustee argues, Tr. Br. 50, *Romani* provides no support whatsoever for the Trustee's position. In *Romani*, the Supreme Court "treat[ed] the Tax Lien Act of 1966 as the governing statute when the Government is claiming a preference in the insolvent estate of a delinquent taxpayer." *Id.* at 532. The Tax Lien Act of 1966 "broadened the protection" provided by earlier statues that "the federal tax lien shall not be valid as against any . . . judgment creditor until notice has been filed." *Id.* at 523-24 (internal quotation marks omitted). This governed over the earlier federal priority statute, which provided that "a claim of the United States Government shall be paid first when a decedent's estate cannot pay all of its debts." *Id.* at 519 (internal quotation marks omitted). Each statute

at issue in *Romani* thus addressed the claim of the same entity—the federal government—for the same property—a delinquent taxpayer's estate. That is not the case here, where the claimants are entirely distinct, there has been no showing that the Trustee has a claim on the specific assets being used for the Settlement, and the Anwar Plaintiffs' claims and the Settlement funds are not even within the purview of the SIPA statute governing the Trustee's claims.

SIPA provides relief only for customers of a failed broker-dealer by providing for recovery only of property of that failed broker-dealer. It does not address the protections afforded by the broader federal securities laws. Thus, this case is more like *United States v. Emory*, 314 U.S. 423, 429-433 (1941) and *United States v. Key*, 397 U.S. 322, 324-333 (1970), both distinguished in *Romani* because there was no "plain inconsistency" between the statutes involved, "nor was there reason to believe that the application of [one] would frustrate Congress' intent." *Romani*, 523 U.S. at 533.

## IV.  The District Court Did Not Abuse its Discretion in Dismissing the Injunction Action Under the Doctrine of Laches

A party seeking to enforce a claim must act promptly. A claim is barred by the equitable defense of laches if the defendant establishes "an unreasonable delay by the plaintiff in bringing suit" and "prejudice to the defendant." *Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir. 2003); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). Contrary to the Trustee's

unsupported assertion, a valid laches defense bars a debtor's claim to enforce the automatic stay. *See Thorton v. First State Bank of Joplin*, 4 F.3d 650, 653 (8th Cir. 1993); *Matthews v. Rosene*, 739 F.2d 249, 251-52 (7th Cir. 1984). A laches defense may also prevent the issuance of injunctive relief. *See New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*, 873 F.2d 576, 585 (2d Cir. 1989); *Bray v. City of New York*, 346 F. Supp. 2d 480, 491 (S.D.N.Y. 2004).

The grounds for the Trustee's belated action to enjoin Anwar were well-known to him at all times. The Trustee's failure to advance those known (albeit faulty) theories at the outset of the Anwar litigation was unreasonable, and obvious and considerable prejudice to the settling parties would result if they were given effect now.

## A.    The District Court's Findings of Fact Were Not Erroneous

The district court correctly observed that the Injunction Action is a textbook example of the type of action requiring dismissal pursuant to the equitable doctrine of laches. First, the Trustee's delay is undeniable. The automatic stay the Trustee claims applies to Anwar went into effect on December 15, 2008 upon the filing of the BLMIS SIPA liquidation. *See* Tr. Br. 10. The Anwar proceeding was commenced four days later on December 19, 2008, with the filing of the first class action complaint against the Fairfield Defendants. *See* A-974. Thus, under the Trustee's theory, the automatic stay applied immediately when that first complaint was filed, and the Trustee could

43

have moved to enforce it at that time before massive fees, time and energy were expended on the case by the parties and the district court.

Notably, on several occasions in the following years, the Trustee moved the bankruptcy court to enforce the automatic stay or otherwise enjoin actions filed by customer-creditors of the BLMIS Estate soon after their filing. *See, e.g.*, *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 474-75 (S.D.N.Y. 2012) (moving on March 31, 2010 to halt an action filed on February 16, 2010); *Picard v. Maxam Absolute Return Fund L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*, 460 B.R. 106, 113 (Bankr. S.D.N.Y. 2011) (enjoining an action filed on July 11, 2011 by order dated October 12, 2011). In Anwar, by contrast, the Trustee sat on his hands through nearly four years of pitched litigation before he sought to apply the automatic stay to the case.

The prejudice to the Fairfield Defendants caused by the Trustee's delay is evident. The Fairfield Defendants vigorously defended Anwar while the Trustee slept on his professed right to halt the proceeding, expending tens of millions of dollars in defending a complex class action litigation involving over one-hundred named plaintiffs, three additional groups of co-defendants, millions of pages of produced documents, and dozens of depositions occurring both domestically and abroad. A-612-613 ¶¶ 4-5. That time and expense would have been avoided if the Trustee had successfully moved at the outset. And having toiled through a hard-fought litigation for nearly four years and agreeing to a resolution of all claims through protracted negotiations, the Fairfield

44

Defendants and the Anwar Plaintiffs would be terribly prejudiced if prevented now from realizing the fruit of those labors.

Severe prejudice would result even if the injunction were to remain in place only until the disposition of the Trustee's Avoidance Action against the Fairfield Defendants. The Avoidance Action has not progressed beyond the complaint and likely will take years to resolve. Thus, at a minimum, the Anwar Plaintiffs would be prejudiced by a years-long delay in receiving settlement payments, and the Fairfield Defendants would be subject to many more years of uncertainty. More fundamentally, a prolonged stay of the Settlement could lead to its unraveling.

On appeal, the Trustee attempts to justify his delay through a number of allegations either completely unsupported or outright contradicted in the record before the district court.

First, the Trustee claims he moved as soon as it became apparent that the Fairfield Defendants might dissipate their assets in Anwar. This ignores that the defense of Anwar was hugely expensive and dissipated the Fairfield Defendants' assets on defense costs while the Trustee stood idly by for nearly four years.

Second, the Trustee claims for the first time on appeal, with no reference whatsoever to the record, that he "told the Anwar Plaintiffs and Fairfield Defendants repeatedly, from early on, that he would block any attempt to collect fraudulently transferred assets held by the Fairfield Defendants." Tr. Br. 59.

45

The Trustee made no such representation to the district court, and the declaration of the attorney for the Trustee who engaged in settlement discussions with the Fairfield Defendants contains no such claim. A-627-636. For good reason. What actually occurred was that, after global settlement talks with the Trustee broke down, his counsel was advised that the parties to Anwar might seek a separate settlement, whereupon counsel for the Trustee gave it his blessing. A-953 ¶ 4. The record further reflects that the Trustee affirmatively chose to carve out claims against two of the Fairfield Defendants—Mssrs. Noel and Tucker—from his proceeding to enjoin claims against Madoff-related parties. A-549-575; A-604-607. Given the actual state of the record, the Trustee's erroneous factual assertion should be disregarded by this Court. *See Brown v. Quiniou*, 467 F. App'x 13, 14 n.1 (2d Cir. 2012) (summary order) ("We decline to consider . . . factual assertions [appellant] makes without any reference to the record.").

Third, the Trustee's claims that he "sought and received assurances that any settlement would resolve the estate's claims" and the Settlement was struck "behind [his] back," Tr. Br. 59, are equally at odds with the record, which reflects quite the opposite. Again, on April 3, 2012, when global settlement negotiations had reached an impasse, counsel for certain of the Fairfield Defendants explicitly informed counsel for the Trustee that the Fairfield Defendants might explore a settlement of Anwar on a stand-alone basis, and the Trustee gave approval to such efforts. A-953 ¶ 4.

46

Finally, the one supported fact relied on by the Trustee—that the Trustee engaged in sporadic settlement negotiations with the Fairfield Defendants and Anwar Plaintiffs regarding a potential global settlement—actually undermines his position. The Trustee is careful not to overstate the nature of these discussions. He does not claim that the parties entered into negotiations in order to resolve the Trustee's purported right to stay or enjoin Anwar, but admits that it was the Fairfield Defendants who sought a three-way agreement to contemporaneously resolve all claims asserted against them. A-632 ¶ 10. That fact distinguishes this case from those relied on by the Trustee where delay in asserting an action was excused because of negotiations to settle the underlying dispute. Here, a global settlement of the claims asserted against the Fairfield Defendants would have, by definition, resulted in the outcome the Trustee now seeks to prevent—a payment by the Fairfield Defendants to the Anwar Plaintiffs.

### B. The District Court Did Not Commit an Error of Law

The district court did not commit an error of law in applying the requirements necessary for a finding of laches.

First, the magnitude of the Trustee's delay relates equally to his claim for relief under Section 105(a) of the Code as his claim to enforce the automatic stay. His suggestion that there was no "immediate" threat of dissipation of the Fairfield Defendants' assets before the Settlement ignores not only the substantial Anwar defense costs depleting those assets, but his own allegations.

47

In the Injunction Action, the Trustee claimed the Anwar Plaintiffs were asserting claims against the Fairfield Defendants that actually belong to the Estate, and as a result, the prosecution of Anwar "will impair the [bankruptcy court's] jurisdiction" and "could ultimately result in another court determining how potential customer property is distributed." A-397. He also alleged that an injunction was necessary to "prevent the substantial confusion of other investors and potential plaintiffs with respect to whether they must file separate actions" and to "avoid the possibility of inconsistent decisions." A-398. All such concerns, whether founded or unfounded, were present since the filing of Anwar, regardless of whether a settlement was imminent.

In addition, the Trustee's argument that the district court abused its discretion by refusing to address the issue of unclean hands is baseless. The district court expressly and properly found that the Trustee's arguments based on discussions about settlement did not excuse his delay. SPA-30 n.10. Neither do they support a finding of unclean hands, which prevents the application of an equitable doctrine only where the party seeking its application engaged in "particularly egregious conduct" or an "unconscionable act." *See, e.g.*, *PenneCom B.V. v. Merill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004); *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1361 (Fed. Cir. 2008).

The Trustee's unclean hands argument is entirely premised on a supposed conversation occurring in October 2012 during which he claims counsel for the

Anwar Plaintiffs advised that there was nothing to report regarding settlement discussions with the Fairfield Defendants. A-633 ¶ 17. Even if true, at the time of the alleged October 2012 conversation the Anwar Settlement had not been finalized and could still have fallen apart—there was nothing fairly to report to an outsider to the negotiations. And even if there had been, at the time of that conversation the Anwar litigation had already been pending for well over three-and-a-half years. The same prejudice would have resulted if an injunction had been sought and issued at that untimely date. As such, the Injunction Action would have been properly barred by laches even if counsel for the Anwar Plaintiffs at that time had discussed with the Trustee a possible Anwar settlement and the Trustee had moved for an injunction then. *See, e.g.*, *Brown*, 467 F. App'x at 15 (affirming finding of laches based on three years of delay); *Cleveland Newspaper Guild v. Plain Dealer Publ'g Co.*, 839 F.2d 1147, 1154-55 (6th Cir. 1988) (affirming dismissal on ground of laches where the alleged bad-faith conduct by the defendant had occurred after four years of delay by the plaintiff).

## V. The District Court's Orders Regarding Intervention in Anwar Were Not Abuses of Discretion

### A. The Trustee Properly Applied the Requirements of Rule 24

The district court was well within its discretion in denying the Trustee's eleventh-hour request to intervene in Anwar. First, the Trustee mischaracterizes the district court's decision, suggesting that it "exceeded its authority" by

relying on an "improper factor" of whether the Trustee could raise related arguments in a separate proceeding.  Tr. Br. 53.  To the contrary, the district court correctly applied Rule 24 in finding that intervention was "not necessary to protect the Trustee's alleged interest" because the Trustee's arguments in opposition to the Settlement were already before the court by way of the Injunction Action.  SPA-35.  It is well settled that an applicant seeking intervention must establish that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (affirming the denial of intervention as of right and by permission where the applicant seeking to challenge a consent decree presented its arguments to the court by means other than intervention).

Second, the court did not abuse its discretion in finding the Trustee's motion untimely.  *See* Fed. R. Civ. P. 24(a), (b) (requiring motions for intervention to be "timely").  This Court has noted that a "district court has broad discretion in assessing the timeliness of a motion to intervene" and may consider factors including "how long the applicant had notice of its interest in the action before making its motion" and the prejudice resulting from the grant or denial of the motion.  *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000).  The Trustee's delay was unjustified because he had been on notice of the alleged property interest he sought to protect since the outset of the

Anwar litigation, and he was on notice that the Anwar Defendants were dissipating assets in defending Anwar. Moreover, while the parties to Anwar faced the risk of delay in the settlement-approval proceedings from the Trustee's belated attempt to intervene, the Trustee was not prejudiced at all by the denial of his motion because his objection to the Settlement already was before the district court by way of the Injunction Action.

Finally, the district court's denial of the Trustee's motion to intervene was not in violation of Federal Rule of Civil Procedure 83(b), which forbids the imposition of a "sanction or other disadvantage" only for noncompliance with a local rule or individual practice of which the violator does not have notice. This rule has no applicability here. The Trustee's request for intervention was denied on the merits—not based on noncompliance with any individual practice of the district court. In nearly identical circumstances, this Court has affirmed the denial of a motion based on its receipt of a letter requesting leave to make such a motion where the movant made the argument necessary to preserve appellate review and could not identify "any additional argument it would have made had it filed full motion papers." *In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (summary order).

### B. Denying a Pointless Request to Supplement the Record Was Not an Abuse of Discretion

The district court did not abuse its discretion in denying the Trustee's request—made after the court already had denied the Trustee's motion to

intervene—to supplement the record for purposes of his anticipated appeal. The untimeliness of the Trustee's request for intervention and the inadequacy of his basis for the request were and are readily apparent. Documents or evidence not before the district court at the time of its decision are not properly considered on appeal. *See Dictograph Prods. Co. v. Sonotone Corp.*, 231 F.2d 867, 867 (2d Cir. 1956); *United States v. Blinder*, 10 F.3d 1468, 1477 (9th Cir. 1993). The grant of the Trustee's request to supplement the record with material that could not be considered on appeal would have served no purpose identified by the Trustee. And the Trustee does not now suggest that he had any additional reason for supplementing the record, or even that he had evidence or argument that could have changed the result below.

## C.   The District Court's Approval of the Settlement Was Proper

The district court did not err in approving the Settlement. The district court addressed each of the Trustee's arguments seeking to prevent the Settlement in a well-reasoned decision dismissing the Injunction Action. In addition, the claims in Anwar do not conflict with SIPA, *see supra* Section III, and thus their resolution does not conflict with federal law.

More fundamentally, because the district court properly denied the Trustee's motion to intervene, the Trustee is not a party to Anwar, and thus he lacks standing to appeal the final judgment in that action approving the Settlement. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *Farmland Dairies*

*v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1045 (2d Cir. 1988).

## **CONCLUSION**

For the reasons set forth herein, this Court should affirm each of the district court's decisions challenged by the Trustee.

Respectfully submitted,

Dated:  May 30, 2013
   New York, New York

/s/ Mark G. Cunha
Mark G. Cunha, Esq.
Peter E. Kazanoff, Esq.
Jeffrey L. Roether, Esq.
Jeffrey E. Baldwin, Esq.
Nicholas S. Davis, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
mcunha@stblaw.com
pkazanoff@stblaw.com
jroether@stblaw.com
jbaldwin@stblaw.com
ndavis@stblaw.com

*Attorneys for Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Limited, Fairfield Heathcliff Capital LLC, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Lourdes Barreneche, Vianney d'Hendecourt, Yanko Della Schiava, Harold Greisman, Jacqueline Harary, Richard Landsberger, Daniel E. Lipton, Julia Luongo, Mark McKeefry, Charles Murphy, Corina Noel Piedrahita, Maria Teresa Pulido Mendoza, Santiago Reyes, Andrew Smith, Philip Toub, and Amit Vijayvergiya*

/s/ Marc E. Kasowitz

Marc E. Kasowitz, Esq.
Daniel J. Fetterman, Esq.
KASOWITZ BENSON TORRES &
  FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
mkasowitz@kasowitz.com
dfetterman@kasowitz.com

*Attorneys for Jeffrey H. Tucker*

/s/ Andrew J. Levander

Andrew J. Levander, Esq.
Neil A. Steiner, Esq.
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com
neil.steiner@dechert.com

*Attorneys for Andrés Piedrahita*

/s/ Edward M. Spiro

Edward M. Spiro, Esq.
MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
espiro@maglaw.com

*Attorneys for David B. Horn and
Robert A. Blum*

/s/ Bruce A. Baird

Bruce A. Baird, Esq.
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
bbaird@cov.com

*Attorneys for Gregory Bowes*

/s/ Andrew Hammond

Glenn M. Kurtz, Esq.
Andrew Hammond, Esq.
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gkurtz@whitecase.com
ahammond@whitecase.com

*Attorneys for Walter M. Noel, Jr.*

/s/ Sean F. O'Shea

Sean F. O'Shea, Esq.
O'SHEA PARTNERS LLP
521 Fifth Avenue, 25th Floor
New York, New York 10175
Telephone: (212) 682-4426
Facsimile: (212) 682-4437
soshea@osheapartners.com

*Attorneys for Cornelis Boele*

54

## <u>CERTIFICATE OF COMPLIANCE</u>

1.　　This brief complies with the type-volume limitations of Fed. R.

App. P. 32(a)(7)(B) because it contains 13,772 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.　　This brief complies with the typeface requirement of Fed. R. App.

P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it

has been prepared in a proportionally spaced typeface using Microsoft Word in

14 point Times New Roman font.

<u>/s/　　Mark G. Cunha　　</u>
MARK G. CUNHA